# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BRIAN K. DURLING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 18 C 4052 |
| v. ) | |
| ) | Magistrate Judge |
| MENARD, INC., d/b/a MENARDS, ) | Maria Valdez |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This personal injury action premised on diversity jurisdiction is before the Court on Defendant's Motion for Summary Judgment [Doc. No. 26]. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Defendant's motion is granted.

## FACTS[1]

On May 18, 2016, Plaintiff Brian Durling, an Illinois citizen, was a customer at a Menards store located at 9140 S. Harlem Avenue, Bridgeview, Illinois, which is within this judicial district. (LR 56.1(a)(3) ¶¶ 1, 3-4.) Defendant Menard, Inc., d/b/a Menards, is a Wisconsin corporation and is licensed to do business in Illinois. (*Id.* ¶¶ 2, 5.) The amount in controversy in the case exceeds $75,000, (*id.* ¶ 6), and thus the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).

---

[1] Unless otherwise noted, the following material facts are undisputed or are deemed admitted due to a party's failure to comply with Local Rule 56.1, which this Court strictly enforces.

The Menards store in which Plaintiff was a customer had an area in front of the aisles that was set up for a patio furniture display. (*Id.* ¶ 9.) The color of the aisle floor was "a multi-speck color tile, off white." (*Id.* ¶ 10.) A black rubber mat was on the floor under the entire patio display. (*Id.* ¶¶ 11-13.) There were no warning colors on the mat or any warning devices around the area of the mat. (LR 56.1(b)(3)(C) ¶¶ 62, 64.)

Plaintiff asked a Menards employee for assistance in the patio area, and she asked him to follow her. (LR 56.1(a)(3) ¶¶ 22-23; LR 56.1(b)(3)(C) ¶ 52.) The employee stepped onto the mat and Plaintiff followed, also stepping on it in order to walk through the patio display. (LR 56.1(a)(3) ¶¶ 23-24.) Plaintiff saw the employee walk onto the mat but did not notice any change in her gait or assume she had to step up onto anything. (*Id.* ¶ 32; LR 56.1(b)(3)(C) ¶ 63.) The mat and the display were both easily visible, nothing blocked Plaintiff's view of the mat, and he did not have any trouble seeing it. (LR 56.1(a)(3) ¶¶ 14-16, 19, 32.) Plaintiff knew the mat was there and that he was going to step onto it. (*Id.* ¶ 20, 32.) When Plaintiff first saw the mat, he knew that it was on top of the tile floor, and he did not expect that it was on the same level as the floor. (*Id.* ¶¶ 17-18.)

Plaintiff stepped from the aisle floor onto the mat with his right foot without incident, while taking a normal stride and without changing his gait or needing to step up. (*Id.* ¶¶ 25-28.) However, when he brought his left foot forward, his left toe caught on the edge of the mat. (*Id.* ¶ 29; LR 56.1(b)(3)(C) ¶¶ 55-56.) He was looking at the store employee's back at the time his foot caught on the mat. (LR

2

56.1(b)(3)(C) ¶ 56.) This caused Plaintiff to lose his balance, so he "started bouncing up in the air to try and catch [his] balance and [he] bounced off the mat onto the regular floor and went down." (LR 56.1(a)(3) ¶¶ 30-31.) Plaintiff never observed the height of the mat, he did not look at the mat while he was on the ground or after he got up, and at no point did he measure the height differential between the aisle floor and the mat. (*Id.* ¶¶ 33-35, 38, 44.) Plaintiff never looked at the mat to know whether there was a lip on the edge, or whether it was flipped up or smooth where he stepped. (*Id.* ¶¶ 44, 50-51.)

Plaintiff estimated the mat to be around one and a half inches in height based solely on the fact that his left toe caught on it. (*Id.* ¶¶ 40-45; LR 56.1(b)(3)(C) ¶ 54.) At no point in time did Plaintiff see anything wrong with the mat. (LR 56.1(a)(3) ¶ 39.) Plaintiff got up within a few minutes of his fall without assistance. (*Id.* ¶¶ 36-37.) He did not complete any accident reports, take any photographs, or request medical assistance before leaving the store. (*Id.* ¶ 37.) Plaintiff returned to the store several days later to make an incident report and told store employees at that time what had happened. (LR 56.1(b)(3)(C) ¶¶ 57-59.)

According to the general manager of the Menards store, the mat was 5/8 inches thick. (LR 56.1(a)(3) ¶ 46.) There were no prior incidents of customers or anyone falling in the store's patio area, and Plaintiff was not aware of any complaints about the mat. (*Id.* ¶¶ 47-48.)

# DISCUSSION

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must draw all reasonable inferences in favor of the nonmovant. *Bennington v. Caterpillar Inc.,* 275 F.3d 654, 658 (7th Cir. 2001).

However, once the movant has carried its burden under Rule 56(c), "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The party opposing summary judgment must offer admissible evidence in support of his version of events, and hearsay evidence does not create a genuine issue of material fact. *McKenzie v. Ill. Dep't of Transp.,* 92 F.3d 473, 484 (7th Cir. 1996); *see Larimer v. Dayton Hudson Corp.*, 137 F.3d 497, 500 (7th Cir. 1998) ("'If the non-moving party bears the burden of proof on an issue, . . . that party may not rest on the pleadings and must instead show that there is a genuine issue of material fact.'") (citation omitted). "The mere existence of an alleged factual dispute is not sufficient to defeat a summary judgment motion. . . . The nonmovant will successfully oppose summary judgment only when it presents 'definite, competent evidence to rebut the motion.'" *Vukadinovich v. Bd. of Sch. Trs. of N. Newton Sch. Corp.*, 278 F.3d 693, 699 (7th Cir. 2002) (citations omitted).

Furthermore, courts are "'not required to draw every conceivable inference from the record,'" *United States v. Luce*, 873 F.3d 999, 1005 (7th Cir. 2017) (citation omitted), nor do they "have to scour the record or make a party's argument for it," *Varlen Corp. v. Liberty Mut. Ins. Co.*, 924 F.3d 456, 460 (7th Cir. 2019).

## II. ANALYSIS

The substantive law of Illinois governs this diversity action, and thus the Court will look to Illinois law on negligence. *See Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018). In order to prevail on his negligence claim, Plaintiff must show that (1) Defendant owed him a duty of care; (2) Defendant breached that duty; and (3) he suffered an injury proximately caused by the breach of duty. *See id.* at 906; *see also Thompson v. Gordon*, 948 N.E.2d 39, 45 (Ill. 2011) ("Whether a duty is owed presents a question of law for the court to decide, while breach of duty and proximate cause present questions of fact for the jury to decide.").

The question of whether a defendant owed a duty to a party "is determined by asking 'whether defendant and plaintiff stood in such a relationship to one another that the law imposed upon defendant an obligation of reasonable conduct for the benefit of plaintiff.'" *Bucheleres v. Chicago Park Dist.*, 665 N.E.2d 826, 831 (Ill. 1996) (citation omitted); *see Dunn*, 880 F.3d 899 at 906 ("As a matter of practical application, however, 'the concept of duty in negligence cases is very involved, complex and indeed nebulous.'") (citation omitted). Relevant factors to be considered include "the likelihood of injury, the reasonable foreseeability of such injury, the magnitude of the burden of guarding against injury, and the

5

consequences of placing that burden on the defendant." *Bucheleres*, 665 N.E.2d at 836; *see Dunn*, 880 F.3d at 906.

An exception to the general duty of care is the "open and obvious" doctrine, which provides that "persons who own, occupy, or control and maintain land are not ordinarily required to foresee and protect against injuries from potentially dangerous conditions that are open and obvious." *Bucheleres*, 665 N.E.2d at 832; *see Dunn*, 880 F.3d at 906. The open and obvious doctrine recognizes that the factors of likelihood of injury and foreseeability of harm are decreased when the potential risk is readily apparent and can be averted. *See Bucheleres*, 665 N.E.2d at 832, 836 ("[T]he law generally assumes that persons who encounter these conditions will take care to avoid any danger inherent in such condition."); *Buchaklian v. Lake County Family Young Men's Christian Ass'n*, 732 N.E.2d 596, 600 (Ill. App. Ct. 2000) ("For a condition to be open and obvious, an invitee must reasonably be expected to discover it and protect himself against it.").

The issue of whether a danger is open and obvious may involve a question of fact, but "where no dispute exists as to the physical nature of the condition, whether the dangerous condition is open and obvious is a question of law." *Bruns v. City of Centralia*, 21 N.E.3d 684, 690 (Ill. 2014) (citation omitted); *see Dunn*, 880 F.3d at 906. The obviousness of the dangerous condition "is determined by the objective knowledge of a reasonable person, not the plaintiff's subjective knowledge." *Buchaklian*, 732 N.E.2d at 602 (internal quotation and citation omitted). Thus, "if a reasonable person with the plaintiff's knowledge of the situation would have

6

appreciated and avoided a hazard created by the defendant's actions, then from the defendant's perspective the plaintiff's injuries were neither foreseeable nor likely." *Dunn*, 880 F.3d at 907 (internal quotation and citation omitted).

Plaintiff's brief admits that "Plaintiff's deposition clearly establishes that the mat at issue was an open and obvious condition." (Pl.'s Resp. at 4.) The Court agrees. Plaintiff saw the mat before he stepped on it, and he knew it was not at the same level as the floor. It was a contrasting color from the tile floor, so the edges were easily perceived.

According to Plaintiff, however, Defendant nevertheless had a duty to him because (1) Menards created the dangerous condition by installing a 5/8 inch mat in an area where customers were expected to walk; (2) the mat was installed where customers were likely to be distracted, *e.g.*, by looking at items on the shelves; and (3) Defendant should reasonably have foreseen the danger and provided a warning, by using cones or signs.

Plaintiff relies on the notion that an open and obvious condition is not "an automatic or *per se* bar to the finding of a legal duty on the part of the defendant who owns, occupies or controls the area in which the injury occurred." *Bucheleres*, 665 N.E.2d at 833; *see Buchaklian*, 732 N.E.2d at 600 (explaining that the open and obvious doctrine does not protect a possessor of land who "should anticipate the harm despite such knowledge or obviousness") (quoting Restatement (2d) of Torts § 343A (1965)). Illinois recognizes two exceptions to the open and obvious doctrine, the "distraction exception" and the "deliberate encounter exception." *Dunn*, 880 F.3d

7

at 908 (quoting *Belluomini v. Stratford Green Condo. Ass'n*, 805 N.E.2d 701, 705 (Ill. App. Ct. 2004)) ("'Whereas operation of the open and obvious rule negatively impacts the foreseeability and likelihood of injury, application of an exception to the rule positively impacts the foreseeability and likelihood of injury.'"). The distraction exception "'applies where the possessor of land has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it.'" *Dunn*, 880 F.3d at 909 (quoting *Bruns*, 21 N.E.3d at 691) (internal quotation and alteration omitted).

Plaintiff's arguments that an exception to the open and obvious doctrine applies here are not persuasive. First, the mere placing of a 5/8-inch mat on the store's floor did not create a dangerous condition and, without more, does not demonstrate that Menards was negligent. *See Johnson v. United States*, No. 98 C 2572, 1999 WL 446694, at *3 (N.D. Ill. June 23, 1999) ("On its face, it is not negligent to place a mat on the floor.") (citing *Robinson v. S.W. Bell Tel. Co.*, 167 N.E.2d 793, 795 (Ill. App. Ct. 1960). Plaintiff has not offered any evidence that the mat was placed in a negligent manner, or that it was worn, poorly maintained, or otherwise defective. *See Gentry v. Shop 'n Save Warehouse Foods, Inc.*, 708 F. Supp. 2d 733, 738 (C.D. Ill. 2010) (holding that the use of a floor mat in a store was reasonable when there was no evidence it was defective or in poor repair); *Johnson*, 1999 WL 446694, at *3 (finding no negligent placement of floor mats that later

8

became rumpled due to foot traffic, when there was no evidence they had been placed improperly).

Second, Plaintiff has offered no evidence or argument that the distraction exception applies merely because customers may look at items on the shelves while walking near the mat. Although Plaintiff is correct that the law does not require invitees "to look constantly downward," *Buchaklian*, 732 N.E.2d at 601, it is also true that "'the mere fact of looking elsewhere does not constitute a distraction.'" *Dunn*, 880 F.3d at 909 (quoting *Bruns*, 21 N.E.3d at 691). Plaintiff's admission that he saw the mat before stepping on it is fatal to his distraction argument. Although he claims he was looking at the store employee's back at the time he tripped, the uncontroverted facts establish that he saw the mat well before he stepped on it, and nothing blocked his view. *Cf. Ward v. K Mart Corp.*, 554 N.E.2d 223, 232 (Ill. 1990) ("The inquiry is whether the defendant should reasonably anticipate injury to those entrants on his premises who are generally exercising reasonable care for their own safety, but who may reasonably be expected to be distracted, as when carrying large bundles, or forgetful of the condition after having momentarily encountered it.").

Even if Plaintiff did not know the precise height of the mat, he knew that it was not flush with the tile floor, and "a reasonable person exercising ordinary perception, intelligence, and judgment would have appreciated that the [mat] posed a tripping hazard and acted accordingly." *See Rosenberg v. Home Depot U.S.A., Inc.*, No. 16 C 5272, 2019 WL 670262, at *5 (N.D. Ill. Feb. 19, 2019) (distinguishing cases in which plaintiffs did not acknowledge they saw the hazard at issue).

9

Finally, Plaintiff relies on a general concept of duty from foreseeability of injury, and that Defendant should have foreseen the need to warn of the dangers of the mat through signs or cones. This argument is also unavailing, as "the concept of foreseeability is not boundless. That something 'might conceivably occur,' does not make it foreseeable. . . . Rather, something is foreseeable only if it is 'objectively reasonable to expect.'" *Bruns*, 21 N.E.3d at 694 (quoting *Hills v. Bridgeview Little League Ass'n*, 745 N.E.2d 1166, 1184 (Ill. 2000)); *see Ward*, 554 N.E.2d at 232 ("Generally, a party need not anticipate the negligence of others."); *see also Dunn*, 880 F.3d at 909 (noting that as of 2015, no published premises liability negligence case had found that the open and obvious rule applied without exception yet the defendant nevertheless owed the plaintiff a duty) (citing *Bujnowski v. Birchland, Inc.*, 37 N.E.3d 385, 397 (Ill. App. Ct. 2015)). The existence of the mat was open and obvious as a matter of law, there were no defects in the mat's placement or condition, and no exceptions to the open and obvious doctrine apply here. Because Plaintiff's injury was neither likely nor reasonably foreseeable, Defendant did not owe Plaintiff a duty as a matter of law, and summary judgment must be granted in its favor.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [Doc. No. 26] is granted.

**SO ORDERED.**        **ENTERED:**

*Maria Valdez*

**DATE:**     **March 2, 2020**        _____
                                                      **HON. MARIA VALDEZ**
                                                      **United States Magistrate Judge**